IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

DAVID KENNEY, HAROLD L. SUMMERS, JR.,
and ROSCOE TUCKER,

                    Plaintiffs,

v.                                   CIVIL ACTION NO. 2:05-0390

WILLIAM J. CHARNOCK, individually
and as the Kanawha County Prosecuting Attorney,
and KANAWHA COUNTY COMMISSION,

                    Defendants.

### MEMORANDUM OPINION AND ORDER

       Pending before the Court is a Motion to Dismiss by Defendants William J. Charnock,

who is sued individually and as the Kanawha County Prosecuting Attorney, and the Kanawha

County Commission.  In their motion, Defendants assert that they are entitled to qualified immunity

and, therefore, the action against them should be dismissed.  Plaintiffs David Kenney, Harold L.

Summers, Jr., and Roscoe Tucker assert that Defendants are not entitled to qualified immunity based

upon the facts alleged in the Complaint and the motion should be denied.  For the following reasons,

the Court **DENIES** Defendants' motion.

### I.
### FACTS

       Plaintiffs are all former investigators for the Kanawha County Prosecuting Attorney's

Office who were hired by Defendant Charnock's predecessor.  Plaintiffs allege in their Complaint

that, shortly after Defendant Charnock was elected as Prosecutor, he engaged in mass political

firings which included Plaintiffs' terminations. *Complaint* ¶ 19.  Plaintiffs assert that their primary

duty as investigators was to serve subpoenas and, as such, they occupied nonpolicymaking positions. *Id*. at ¶¶ 5, 7, & 9.  Therefore, Plaintiffs claim that their political views were irrelevant to carrying out their duties, and their terminations were unconstitutional political firings in violation of 42 U.S.C. § 1983, public policy, and Article X, Section 7 of the West Virginia Constitution.

## II.
## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defending party may move to dismiss if the pleading party has failed to state a claim for which relief may be granted.  A Rule 12(b)(6) motion tests the sufficiency of the pleading.  It does not resolve factual disputes, "the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  In considering the motion, the claims must be viewed in the light most favorable to the non-moving party and all allegations accepted as true. *Id*. Dismissal is appropriate only when it appears beyond a doubt that no set of facts would entitle the pleader to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III.
## DISCUSSION

The parties agree that in resolving whether Defendants are entitled to qualified immunity, the Court must look to the two-part test announced by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001).  In *Saucier*, the Supreme Court held that "the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered[.]" 533 U.S. at 200.  Defendants assert that Plaintiffs cannot met either prong of this test.  However, Defendants concede that, under the motion to dismiss standard, the Court must assume that Plaintiffs

were terminated for political reasons.  Nevertheless, Defendants assert that, even if the Court makes

this assumption, Plaintiffs have not alleged this action violates a "clearly established" constitutional

right.


In *Elrod v. Burns*, 427 U.S. 347 (1976), the Supreme Court addressed the issue of

political patronage in a Sheriff's Office.  The Respondents were all Sheriff's Office employees who

alleged they were discharged because they were not affiliated or sponsored by the Democratic Party.

427 U.S. at 350.  In considering the issue of whether public employees can state a claim under the

First and Fourteenth Amendments when they are discharged or threatened to be discharged solely

because of their political affiliation or nonaffiliation, Justice Brennan writing for the plurality of the

Court stated:

> patronage dismissals severely restrict political belief
> and association.  Though there is a vital need for
> government efficiency and effectiveness, such
> dismissals are on balance not the least restrictive
> means for fostering that end.  There is also a need to
> insure that policies which the electorate has
> sanctioned are effectively implemented.  That interest
> can be fully satisfied by limiting patronage dismissals
> to policymaking positions.

*Id*. at 372.  In his concurring opinion, Justice Stewart agreed that employees in nonpolicymaking

or nonconfidential positions cannot be discharged or threatened with discharge solely because of

their political beliefs. *Id*. at 375 (Stewart, J. concurring) (citation omitted).  However, determining

what constitutes a policymaking position is often not an easy task.  Even in *Elrod*, Justice Brennan

recognized that "[n]o clear line can be drawn between policymaking and nonpolicymaking positions.

While nonpolicymaking individuals usually have limited responsibility, that is not to say that one

with a number of responsibilities is necessarily in a policymaking position.  The nature of the responsibilities is critical." *Id*. at 367.  Justice Brennan further stated that the burden to "validate an encroachment on protected interests" rests on the government and cases of doubt should be resolved in favor of the affected employee. *Id*. at 368.

Four years later in *Branti v. Finkel*, 445 U.S. 507 (1980), the Supreme Court departed from the policymaking and confidential labels used in *Elrod*.  Justice Stevens writing for the majority recognized the difficulty in determining whether political affiliation is a legitimate factor to consider with respect to a particular job and found the policymaking and confidential labels in some instances to be underinclusive and in other instances to be overinclusive. 445 U.S. at 518.  Thus, Justice Stevens stated that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits  a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id*.[1]

The Fourth Circuit addressed the holdings in *Elrod* and *Branti* in *Stott v. Haworth*, 916 F.2d 134 (4th Cir. 1990).  In *Stott*, the Fourth Circuit acknowledged that under *Elrod* and *Branti* certain patronage dismissals violate the First Amendment, but whether political affiliation is an appropriate criteria for a particular position is a difficult question subject to thorough scrutiny. 916 F.2d at 140-41.  In order to answer this question, the Fourth Circuit stated that at a minimum, one

---

[1]Later, in *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990), the Supreme Court expanded the rule to cover lesser actions such as promotions, transfers, recalls after layoffs, and hiring decisions. 497 U.S. at 79.

must make the two-part inquiry enunciated by the First Circuit in *Jiminez Fuentes v. Torres Gaztambide*, 807 F.2d 236 (1st Cir. 1986) (*en banc*).  In that case, the First Circuit held:

> "A threshold inquiry, which derives from *Branti*, involves examining whether the position at issue, no matter how policy-influencing or confidential it may be, relates to 'partisan political interests . . . [or] concerns.' 445 U.S. at 519, 100 S. Ct. at 1295.  That is, does the position involve government decisionmaking on issues where there is room for political disagreement on goals or their implementation?  Otherwise stated, do party goals or programs affect the direction, pace, or quality of governance?
>
> If this first inquiry is satisfied, the next step is to examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement.  We would note that in conducting this inquiry, courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office. *Tomczak* [*v. City of Chicago*], 765 F.2d [633], 640 [(7 Cir.1985)]; *Ness* [*v. Marshall*] 660 F.2d [517], 522 [(C.A. Pa.1981)]; *Alfaro de Quevedo v. De Jesus Schuck*, 556 F.2d 591, 593 n. 4 (1st Cir.1977). 'The relevant inquiry is to the function of the public office in question and not the actual past duties of the particular employee involved.' *Brown* [*v. Trench*], 787 F.2d [167], 168 [(3rd Cir.1986)].  'Thus, if an officeholder performs fewer or less important functions than usually attend his position, he may still be exempt from the prohibition against political terminations if his position inherently encompasses tasks that make his political affiliation an appropriate requirement for effective performance.' *Tomczak*, 765 F.2d at 641."

*Stott*, 916 F.2d at 141-42 (quoting *Jiminez Fuentes,* 807 F.2d at 241-42).  Therefore, the Fourth Circuit concluded that the dispositive question in political patronage cases, "is whether a particular

-5-

position is one that requires, as a qualification for its performance, political affiliation.  If it does, then dismissal or demotion is within the bounds of the Constitution." *Id*. at 143.  Thus, the Court held the inquiry required in patronage cases is "(1) whether the position held was subject to patronage dismissal, and (2) if not, whether there was another constitutionally sufficient reason, such as poor job performance, constant absenteeism or insubordination, to justify the action taken." *Id*.  If the answer to these questions is no, then "a constitutional violation is implicated." *Id*.

Under this analysis, Plaintiffs argue that the Court must ask whether investigators are engaged in "'government decisionmaking on issues where there is room for political disagreement on goals or their implementation[.]'" *Id*. at 141 (quoting *Jimenez Fuentes*, 807 F.2d at 241-42).  As the parties have not yet conducted any discovery on this issue, Plaintiffs assert that the only fact the Court can consider is their allegation in their Complaint that their main job was to serve subpoenas and that they are not policymakers.  Therefore, Plaintiffs argue, based on the existing record, Defendants cannot meet the first *Elrod-Branti* requirement as outlined in *Stott*.  Moreover, Plaintiffs contend that, although it is unnecessary to reach the second part of the inquiry set forth in *Stott*, even then, Defendants' arguments fail.  Specifically, there are factual issues which must be resolved through discovery as to whether "'the particular responsibilities of the position . . . resemble[] a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement.'" *Id*. (quoting *Jimenez Fuentes*, 807 F.2d at 242).  Accordingly, Plaintiffs assert the Court must deny Defendants' Motion to Dismiss.

Defendants disagree, however, with Plaintiffs' analysis. Defendants contend that the Court should look to the legislatively defined responsibilities of the investigator position as the Fourth Circuit did with respect to deputy sheriffs in *Jenkins v. Medford*, 119 F.3d 1156 (4th Cir. 1997). In *Jenkins*, several former deputy sheriffs brought suit when they were terminated following the election of the sheriff. 119 F.3d at 1158. Plaintiffs alleged they were fired for political reasons in violation of the First and Fourteenth Amendments. *Id*. The sheriff filed a motion to dismiss based, inter alia, upon qualified immunity. *Id*. The district court denied the motion on the ground that the issue of "qualified immunity might rest on factual issues not yet before the court[.]" *Id*. The sheriff appealed.

In considering the appeal, the Fourth Circuit found that it must apply the analysis outlined in *Elrod* and *Branti* and "consider the specific political and social roles of sheriffs and their deputies in North Carolina." *Id*. at 1160 & 1163. In doing so, the Fourth Circuit found:

> Deputy sheriffs play a special role in implementing the sheriff's policies and goals. The sheriff is likely to include at least some deputies in his core group of advisors. Deputies on patrol work autonomously, exercising significant discretion in performing their jobs. In the course of their duties, deputies will "make some decisions that actually create policy." The sheriff relies on his deputies to foster public confidence in law enforcement. Furthermore, deputies are expected to provide the sheriff with the truthful and accurate information he needs to do his job. In some jurisdictions, the deputy sheriff is the general agent of the sheriff, and the sheriff is civilly liable for the acts of his deputy.

*Id*. at 1162-63 (footnotes omitted). In looking at the legislative pronouncements, the Fourth Circuit noted North Carolina's legislature recognized sheriffs and deputy sheriff positions are "'of special

-7-

concern to the public health, safety, welfare and morals of the people of the State.'" *Id*. at 1163 (quoting N.C. Gen. Stat. § 17E-1 (1996)).  In addition, the legislature noted that the deputy sheriff position is one "'of special trust and confidence, acting in the name of and with powers coterminous with his principal, the elected sheriff.'" *Id*. (quoting N.C. Gen. Stat. § 17E-1) (other citations omitted)).  Moreover, sheriffs may appoint deputies to help them and may be held liable for their misbehavior. *Id*. at 1163 (footnote omitted).  Therefore, the legislature made all deputies at-will employees. *Id*.  Based upon these facts and pronouncements, the Fourth Circuit held that the role of deputy sheriff in North Carolina "is that of a policymaker, and that deputy sheriffs are the alter ego of the sheriff generally, for whose conduct he is liable." *Id*. at 1164.  Accordingly, the Fourth Circuit concluded the deputies could be terminated under the *Elrod-Branti* exception. *Id*.

        In so ruling, the Fourth Circuit retreated from it previous holding in *Jones v. Dodson*, 727 F.2d 1329 (4th Cir. 1984), where it first applied the *Elrod-Branti* exception and held as a matter of law that a deputy sheriff fired solely because of his or her political affiliation violated the Constitution. *Id*. at 1164.  The Fourth Circuit found that this wholesale pronouncement "handicapped and impeded law enforcement since it became the law of this circuit," and it has forced sheriffs "to defend themselves in litigation for dismissing deputies who campaigned against them, thus diverting sheriffs' attention from the important public safety issues in their communities." *Id*. (footnote omitted).  Instead, the Fourth Circuit stated that courts must "engage in a *Stott*-type analysis, examining the specific position at issue," which is what the Fourth Circuit did in reaching its decision which was contrary to *Dodson*. *Id*.  The Fourth Circuit cautioned, however, that their decision in *Jenkins* was limited to "deputies actually sworn to engage in law enforcement activities

on behalf of the sheriff. . . . [It] caution[ed] sheriffs that courts examine the job duties of the position, and not merely the title, of those dismissed." *Id.* at 1165.

      In this case, Defendants argue that under *Jenkins* the Court is to examine the legislatively defined responsibilities of a position. In West Virginia, the position of investigator is authorized by West Virginia Code § 7-4-2, which provides:

> The prosecuting attorney of any county, with the approval of the county commission, or of the governor, or of the court of the county vested with authority to try criminal offenses, or of the judge thereof in vacation, may, within his discretion, offer rewards for the apprehension of persons charged with crime, or may expend money for the detection of crime. . . . Provided, That the prosecuting attorneys of the several counties of the state may, with the approval of the county commissions of their respective counties, entered of record, appoint to assist them in the discharge of their official duties, trained and qualified full-time or part-time investigators of crime.

W. Va. Code § 7-4-2, in part. In *State ex rel. Singleton v. Kanawha County Court*, 100 S.E. 548 (W. Va. 1919), the West Virginia Supreme Court explained:

> Obviously the intention [section 21, c. 32A, Barnes' Code 1916, now codified as § 7-4-2] was to confer authority to offer rewards for the apprehension of persons charged with offenses against that act, and to permit the expenditure of public funds of the county for the detection of those who violate its provisions. The discovery of the crime and the criminal was the chief inducement for the enactment.

100 S.E. at 549. In addition, Defendants cite a number of cases which they claim liken the position of investigator in West Virginia to that of deputy sheriff in North Carolina.

For instance, in *State ex rel. Sprague v. Greenbrier County Court*, 117 S.E. 135 (W. Va. 1923), the West Virginia Supreme Court held in the syllabus that the 1923 version of the statute permits a prosecuting attorney, with the approval of the circuit court, to employ a county prohibition officer to apprehend prohibition law violators.  Likewise, in *Damron v. Ferrell*, 143 S.E.2d 469 (W. Va. 1965), the court stated that "[i]t is clear from . . . [§ 7-4-2] that the prosecuting attorney . . . with . . . approval . . . may employ a person for the purpose of detecting crime within his county[.]" 143 S.E.2d at 471-72.  In addition, Defendants cite a 1958 Opinion of the West Virginia Attorney General in which § 7-4-2 was discussed in the context of whether or not a reward could be offered under the facts of the case presented.  In opining that it could not, the Opinion further stated that the clause "for the detection of crime" found in the statute "relates to the appointment or employment of investigators or detectors of crime . . . . whereby [the county] . . . may gain assistance in the investigation of a crime[.]" 47 W. Va. Op. Att'y Gen. 302, 1958 WL 57998 (1958).

Given these holdings, Defendants argue that the role of investigator is materially the same as that of deputy sheriffs in *Jenkins*.  Defendants assert that here, as in *Jenkins*, the inherent duties of the position include investigating cases, detecting crime, and apprehending criminals.  In addition, the prosecuting attorney may be civilly liable for actions taken by an employed investigator.  Thus, Defendants insist that an investigator is a law enforcement officer and may be dismissed for political reasons as discussed in *Jenkins*.  Moreover, Defendants contend that, even if Plaintiffs could show a constitutional right was violated, a reasonable person could have concluded that the terminations did not violate any constitutional right and, therefore, immunity is

proper. *See Sizemore v. Aliff*, 64 F.3d 659, *4 (4th Cir. 1995) (per curiam) (cited by Defendants and stating, in part, that a reasonable official could consider a chief tax deputy, who had supervisory duties and an advisory role to the sheriff on tax, was a policymaker and subject to political discharge as the law existed in 1992).

However, the Court does not find the legislatively defined responsibilities of an investigator as clear as the responsibilities of the deputy sheriff in *Jenkins*. Here, the relationship between an investigator and a prosecutor is not well defined in § 7-4-2. Rather, the statute in this regard does little more than generally grant the prosecutor the authority to appoint investigators to assist them in investigating crimes. Although the cases cited by Defendants indicate investigators have the power to detect crime and apprehend criminals, these cases likewise do not define the relationship between an investigator and a prosecutor to the same degree as existed in *Jenkins*. Indeed, Plaintiffs claim that their primary responsibility was merely to serve subpoenas. In the absence of clear legislation, the Court must consider evidence about the relationship between an investigator and the prosecuting attorney in West Virginia. In particular, the Court must determine the nature and duties of the position and whether political affiliation is a reasonable qualification for the position. Three years after deciding *Jenkins*, the Fourth Circuit took this approach in *Knight v. Vernon*, 214 F.3d 544 (4th Cir. 2000).

In *Knight*, the Fourth Circuit considered evidence submitted by the parties on summary judgment and held that a jailer could not be fired for political reasons. In reversing the district court's grant of summary judgment for the defendants on the plaintiff's First Amendment

-11-

claim, the Fourth Circuit stated that "[t]he central message of *Jenkins* is that the specific duties of the public employee's position govern whether political allegiance to her employer is an appropriate job requirement." 214 F.3d at 549. Applying this principle to the facts before it, the Fourth Circuit determined that the job responsibilities of the plaintiff as a jailer involved mostly ministerial duties. *Id*. at 550. The plaintiff was not engaged in law enforcement duties. She did not communicate policies or positions of the sheriff to the public, and she was not entrusted with broad discretion. *Id*. Although the dissent in *Knight* pointed out that the plaintiff had discretion in dealing with inmates, implemented the sheriff's policy regarding the jail and inmate treatment, and communicated the sheriff's policy about the management of the prison to jail visitors, the majority found these responsibilities "much more circumscribed than those of a deputy sheriff, and their limited scope prevents a jailer from being transformed into a policymaking official." *Id*. at 550-51. Therefore, the Fourth Circuit held that these "circumscribed powers . . . do not begin to approach the broad powers given to a deputy. Moreover, '[w]hile [the sheriff] is civilly liable for jailers' actions, this is not sufficient to characterize them as his alter-ego' for all purposes." *Id*. at 551 (quoting *Sowards v. Loudon County*, 203 F.3d 426, 438 (6th Cir. 2000)). Accordingly, the Fourth Circuit remanded the plaintiff's First Amendment claim for a trial on the merits of whether she was fired for political reasons. *Id*. at 552.

In the present case, however, discovery is at its initial stages and there is no evidence for the Court to evaluate and determine the nature of the role of an investigator. Although there may be instances in which a motion to dismiss is appropriate because certain positions are clearly defined by statute and judicial opinions, this case is not one of those situations. As the Court stated in its

-12-

previous Order entered on April 13, 2006, the Court believes the legislation and opinions cited by Defendants may contain factors to consider, but they do not provide enough clarity for the Court to determine whether an investigator holds a policymaking and/or confidential position subject to political patronage. Instead, further discovery is clearly necessary on this issue. Similarly, the Court cannot determine on the record before it whether there was a violation of a clearly established right. Plaintiffs cite a number of cases involving the termination of investigators and argue that a reasonable public official would have considered Plaintiffs' terminations as violating their constitutional rights.[2] Again these cases may be helpful, but it is still necessary to determine what a reasonable prosecuting attorney in West Virginia thought the role of investigator to be and whether it was subject to political patronage. Thus, the Court cannot resolve the issue at this point in the litigation.

## III.
## CONCLUSION

Accordingly, as the issue of qualified immunity is before this Court on a motion to dismiss and discovery has just begun, the Court finds for the foregoing reasons that there is simply

---

[2]*Citing, inter alia, Carlson v. Gorecki*, 374 F.3d 461, 466-67 (7th Cir. 2004) (examining role of special investigators for a State's Attorney's office and finding the State's Attorney was not entitled to qualified immunity based on the evidence before the court when she fired the special investigators for political reasons)*; Matlock v. Barnes*, 932 F.2d 658, 665 (7th Cir. 1991) (finding there was nothing in the record that would support the defendants' position that political affiliation was an appropriate requirement for the position of investigator in the city's Law Department and, therefore, holding that the defendants were not entitled to a judgment not withstanding the verdict on the issue of the plaintiff's status); *Laidley v. McClain*, 914 F.2d 1386, 1394 n.6 & 1395 (10th Cir. 1990), *superceded by rule on other grounds*, Fed. R. App. 3(c) (holding there was a genuine issue of material fact as to whether the plaintiff who worked as a child support investigator was fired for political reasons and stating it had no problem concluding that clearly established constitutional rights were at issue "and that a reasonable person would have known that refusing to retrain or firing a low-level staff employee for exercising those rights was unlawful").

not enough clarity at this point in the litigation for the Court to determine whether Defendants are entitled to such immunity.  Therefore, the Court **DENIES** Defendant's motion to dismiss and will permit the parties to proceed with discovery. [Doc. No. 44].

       The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:      July 26, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE